Hear ye, hear ye. This Honorable Appellate Court of the 2nd Judicial District is now back in session. The Honorable Robert T. McCleary presides. Please be seated. Good morning. The second case on the docket this morning is Villager of Lincolnshire v. Daniel Olvera No. 2-23-0255. So is the Lincolnshire plaintiff's appellee, Mr. Daniel Olvera, defendant to penalty. Arguing on behalf of the appellant, Ms. Anne Fick. Arguing on behalf of the appellee, Mr. Lawrence Lawson. Ms. Fick, you may proceed.  Good morning, Counsel. My name is Anne Fick. I'm from the Office of the State Appellate Defender, and I represent Daniel Olvera. May it please the Court. This case presents two issues. The first relates to whether the Villager of Lincolnshire properly established its authority to prosecute a violation for the Illinois Vehicle Code. Let me start with that. Where's the obligation of the Village to make that an element of each offense? The case law that I've cited in my brief indicates that it is the burden of the prosecution to present that information to the court at the time of prosecution. Every single case. In which the Village is attempting to prosecute a violation of the Vehicle Code, yes. So they would – some type of written – Written permission. That should be put into every court file, submitted to the court maybe 10, 15, 20, 50 times a day for each case? For each case that the Village is prosecuting a code, it should be included in the file. Yes. Okay. That's your position? Yes. Okay. Is that statutory? The statute does require written permission. It does not specifically state how it should be prepared. But according to, again, the case law that I cited, particularly Village of Bow Valley Designs, it indicated that it is the burden of the prosecution to establish that authority. Additionally – Well, is it like Thomas Aquinas' definition of a chair? There needs to only be one perfect authorization letter and that's sufficient? Or do we need a bunch of kitty chairs in each case? I think as far as for each prosecution of this code, there just needs to be – it can be a blanket letter. It doesn't have to say you're specifically – for this case, it can be a blanket letter, but it needs to be filed with each case to establish that it has that authority. And your position is that Bow Valley says it must be filed in each case? My position is that it's the prosecution's burden to file in each case. Yes. A written document? A written document of some sort, an email, a letter. Again, it doesn't need to be specific. It could be a general authorization. Is there any citation for that? For? To authority? I already asked about statutory. Now I'm talking about case law. Case law. Again, Village of Bow Valley Designs, which is – I don't have it off the top of my head, but I can provide that for you. Isn't the issue in – is it Zines? Yes. Zines. I don't know. Yeah. Whether or not the DUI occurred in the village, because it's – you know, they need to be authorized for crimes that occurred in the village. Right. So I think that was the issue. Yes, that is the issue there. Interestingly, in Zines, it said, since the village decided to prosecute this case, the village was on notice. The statute required it to prove the defendant committed the offense within the village limits. So if the statute – you know, if Zines – But that's sort of like a venue requirement. Sure. If it is requiring the first part of that statute, though, why would it not require proof of the second part of that statute? It's – it was written in the statute, and it needs to be shown as far as establishing the prosecutorial authority. But it's not what Bow Valley decided on. Bow Valley decided the village limits issue. Venue. And so you're asking us to take that decision and extrapolate it, an issue that was not really before the court in Bow Valley, extrapolate it and say, therefore, they need to show individualized authority on every case. It could be a general grant of authority, but to individually show it on every case. And it's the state's burden. It's not an affirmative defense. Yes, that is what I'm asking. And I'm also basing this on the 3rd District case of People v. Herman, which I cited, which, again, very similar facts to this case. There was no showing in the record on appeal that there was a written permission, and the court reversed outright. Was that a 75 case? 2012. 2012. Oh, yes, I'm sorry. It was 2012. It was an earlier case. This starts back in the 70s. Yes, 1974 is when the statute was amended. If there are no other questions as to that issue, I will move on to the second issue, which is reasonable doubt. To be convicted of driving under the influence, the prosecution has to prove beyond a reasonable doubt that the defendant was in actual physical control of the vehicle, while under the influence of a drug to a degree that rendered him incapable of driving safely. Here, even after viewing the evidence and the like most favorable to the prosecution and giving deference to the trial court's findings, Daniel's conviction must be reversed because it's so unsatisfactory that it does create reasonable doubt. First and foremost, the evidence failed to show that he was incapable of driving safely. Scott Peckler was his driving instructor. He was the one and only person who experienced Daniel's driving. He never opined or even insinuated that Daniel was under the influence of drugs and therefore he was incapable of driving safely. He had 30 years of experience. He'd seen students who had consumed cannabis. He only described Daniel as being nervous. Counsel, what it seems to me you're arguing is that there has to be one witness who testifies as to every element of the offense as opposed to having multiple witnesses testifying to multiple facets or elements in the offense. And if I said somebody was acting like a monkey and hanging from ropes in the ceiling and somebody then suggested, well, that's indicative of someone who has been taking monkey marijuana and so you're telling us that the person who saw them hanging from the ropes also has to be the same witness that says that it's monkey marijuana? Not exactly, if I may answer. Wasn't he testifying that this was bizarre behavior or rather abnormal behavior, which goes to whether or not it affects his ability to drive? And the point is, you then use the anthamine because you presume that he never said why. Well, the point is, what authority do you have that says he also testified to that aspect of the case? The deficiency is not his opinion as to how he was acting or the fact that he didn't opine that he was under the influence. It's the fact that he wasn't shown to be incapable of driving safely. And this is apparent in his testimony. He was asked, you're not going to let these kids be put in danger? He said, no. He said, I think if you think a student is high, you're not going to put him in a car, right? He said, of course not, of course not. He said, Daniel's behavior may have been a little foolish, but nothing that I would say I'm going to keep him out of a car. And therein lies the issue and the reasonable doubt as to his inability to be incapable of driving safely. So you're saying that the law requires that the level of effect has to be such that a reasonable person would conclude that someone or something has been endangered. Endangered? I would say yes, because endangered and incapable of driving safely equates to being endangered. Wasn't there that point when the substitute driving teacher had to put him back into the correct lane because of the car turning in the right lane? Yes, there were actually several instances where he sort of corrected his driving in a way he did not further conclude or opine that he was under the influence of something. There were several instances of mistakes, for sure. That he had to intercede on. I'm so sorry. That he had to intercede on. He had to grab the wheel at some point. At one point he pressed the instructor's brake. Twice. But those are easily mistakes that could be made by a tired driver, a new driver. We have no indication on how much experience Daniel had driving a wheel. That's true, but then you have to consider, then what about the other evidence? The other evidence as far as him incapable of driving safely? Well, the other evidence that supports the conclusion he was under the influence of drugs. The other evidence comes from the dean and the opinions of the officers. There's no evidence. As well as admissions made by the defendant himself? He made admissions. Again, as I mentioned in my brief, this was a 16-year-old who was by all accounts tired, upset. His mom had caught him the night before. Smoking. Smoking marijuana the night before. And there was no indication that he had done it that day. He didn't smell like it. So the record lacks of the insufficiency of the evidence here. There's no indication on how smoking marijuana the night before would impact anyone the next day. There's no indication that the dean had any experience even seeing kids under the influence of drugs. She'd seen a marijuana cigarette in her lifetime, but there was nothing to say that she'd actually experienced kids under the influence, seen friends under the influence, anything that could further her opinion that he was under the influence other than the fact that he was demonstrating some of these other symptoms. Was there any evidence to prove that there was some other reason why this person was acting with some sort of abnormal presence? The other evidence to that would be that most of the people that testified said, yes, he did look tired. He had said he was up until 3 a.m. the night before. All of these things could have contributed to that. So, you know, again, there was just not enough to prove based on what's in the record that he was impacted and particularly impacted to a degree that rendered him incapable of driving safely. If your honors have no other questions, we ask that the decision here be reversed. Thank you for your time. Did he complete supervision successfully? I do not know. I don't know if he did. I'd have to look at his current record. Thank you. You'll have an opportunity to make your vote. Thank you, your honors. Mr. LaLuzerne, you may proceed. Thank you, counsel. Good morning. My name is Lawrence LaLuzerne. I am the attorney for the village of Lincolnshire on this matter. In addressing the first issue which counsel has raised in her briefing, in her argument regarding the authority of the local prosecutor to prosecute these violations of the Illinois Vehicle Code, I believe this court has addressed that very issue back in 1983 in People v. Weider, 119, Ill. 3rd, 468. A very similar situation. The village prosecutor prosecuted a violation of the Illinois Vehicle Code, in that case the DUI in the village of Lake of the Hills. There was no letter of authority in the record from the Lake County, excuse me, the McKinley County State's attorney. And this court found that that issue was waived because it wasn't objected to either at the trial level or in post-trial motions. And as recently as last month, the third district in the village of Glen Ellen v. Podcool, in a Rule 23 opinion at 20-24, Ill. 3rd, 224-20, affirmed or followed the reading and the following in the opinion of Weider, who said if that issue is not raised in the trial level or in post-trial motions, it's waived. In both cases... Is it waived, forfeited, or procedurally defaulted? Well, in Weider, I believe they called it waived. In Podcool, I think they said it was forfeited, but they said that it did rise to... In both cases, they raised a plain error argument, and they said it didn't raise to that level. It wasn't a structural defect in the proceedings. It was merely a procedural one which could have been raised at the post-trial or at the trial level, and it was waived at that point. As to the second issue regarding proof beyond a reasonable doubt, I think Your Honor was kind of right on point as far as there was numerous witnesses, in this case four witnesses that testified for the village, or actually five witnesses and other things. There was three lay witnesses, and there was two officers, and they kind of pieced together the scenario from when the defendant first arrived in his driver's ed classroom until he was arrested back at the Lincolnshire Police Department. You said arrived, did you not, at the driver's education class? Correct. He arrived for his class. I believe it was the seventh period, which was the second to last period of the day. Well, there were videotapes supposedly taken and admitted that showed him walking from wherever the class met to the car. Correct. Yes, Village Exhibit 2 was a compilation of security cameras from Stevenson High School depicting from when the defendant and Mr. Peck were left the classroom, and they had to wade through various hallways. And there was some testimony there was some construction going on at the high school, so it took them longer to get there. But this compilation of videos showed these various hallways and showed the defendant walking from the driver's ed classroom out to the parking lot and actually pulling out of the parking lot. That video went on to show the defendant's driving until he left campus on Route 22. And what was significant there is that Mr. Peckler testified extensively about the defendant's driving. But in that video, and it was pointed out by the trial court, is the walking that was depicted in Village Exhibit 2 all took place behind Mr. Peckler. He was not aware of that up until his arrival at the driver's ed car in the parking lot. So that was not something that factored into consideration. Contrary to what counsel argued, I think it's undisputed here that there was bad driving. There was a lot of bad driving. And I would suggest, as you just as have indicated in your questions, that the actions that Mr. Peckler had to take as the driver's ed instructor, whether it's grabbing the wheel or applying the emergency brake that driver's ed cars are equipped with, probably prevented worst driving instances because if he hadn't grabbed the wheel, the car may have veered into the other lane, causing an accident with that. If he hadn't braked, the vehicle may have proceeded into a stop intersection. And so it was clearly the description by Mr. Peckler that there was a lot of bad driving here, which would be no different than if this was called in by a lay witness who's just driving down the highway behind another vehicle. He or she may not know anything about what is going on inside that vehicle, but they describe to either dispatch or to police officers after the fact that there was significant driving, the vehicle was unable to stay in its lane of traffic, was creating a hazard. So I don't think there's any issue on that. I think the defense at the trial level was relying on the fact that the defendant was just a young, inexperienced driver and that accounted for everything. And it was clear that the driving was horrible, as Mr. Peckler described. And then we put that with the other observations that Dean Rogers made and Officer Beal and Officer Whady. And I think of significance, I think the trial court found of significance was Dean Rogers' testimony and her contact with the defendant. She said she'd been his dean since his freshman year. He was now almost at the end of his sophomore year. He was about two years through his high school career. She'd had about 30 to 40 contacts with him. It's not unusual on a cross-examination in a DUI case when the officers start to talk about their observations of a defendant to their physical manifestations, their speech, and so forth. They get asked by defense counsel, well, you've never met this person before. How do you know what his normal speech pattern is or how he normally acts? And in this case, Dean Rogers had an opportunity for over two years in 30 or 40 instances to observe this defendant. She knew he was not right. She described his speech as being slow. He seemed confused. He was slow in responding to her questions. She said he admitted smoking cannabis and, in fact, was still feeling the effects of it while they were in the dean's office talking with him. She was there when Officer Beal was administering the field sobriety test, and although she's not trained in what to look for, she objectively saw this defendant had difficulty with his balance. He almost fell over numerous times. And she was of the opinion he was under the influence of cannabis or under the influence of marijuana. This opinion was not objected to by the defense. Officer Beal offered his observations, again, similar. The defense's speech was slow. He seemed confused, lethargic. He described the field sobriety test, and if you recall from the record, he described because they were in a tent where the students ate during the COVID, they had to walk all the way through the hallways back to where his squad car was in the parking lot. And so as not to embarrass the defendant, he didn't handcuff him, but he just walked with him. He described him walking in a serpentine manner, which was very much, in fact, confirmed by the exhibit number two. That was the manner that the officer observed as well. Officer Beal had the opinion that the defendant was under the influence of cannabis. They're based on his 26 years of being a police officer, his prior arrest for DUI, and his observations of people under the influence of cannabis before. And then at the police station, Officer Wadick, who was trained as a drug recognition expert, administered an additional field sobriety test. He was of the opinion the defendant was under the influence of cannabis. So you had all of these witnesses that collectively pieced together what they observed from the time the defendant arrived for his classroom until he was released at the police station. And of significance to the defendant, although he admitted that he had smoked cannabis, he was given an opportunity to go to the hospital to submit the blood urine test, but he refused that. And I think the trial court properly considered that as a consciousness of guilt. And none of the opinions here were that the defendant was under the influence of cannabis, were objected by the defense at trial. And this court in City of Wake Forest v. Destiny Bergen, which was a Rule 23 opinion from 2023, 20-23-0-2-2-0-3-3-8, found that when the defense counsel failed to object at trial, again, that issue was forfeited by not objecting to it. I think that the... Counsel, did you prosecute the trial? The Wake Forest case? Or this case? Did you try the case? I tried this case, yes. Did you have a letter of authorization in your file? I did not have a letter of authorization in my file. You have one now. I've had a letter of authorization from my county state's attorney for 35 years to prosecute for the Village of Lincoln Shard. I have a letter of authority, which we've gotten from the various state's attorneys to prosecute, yes. Okay. Did you file the authorization letter with the circuit clerk? We did not. It must be on file at the state's attorney's office, I would assume. I would assume they have it somewhere. I don't know if it's in a file. Well, allegedly this is a letter that the state's attorney's office issued authorizing... Correct. ...Lincoln Shard to prosecute. Yes, sir. You'd think they'd keep a record of their own letters. I would think so if they provided a letter to us. Okay. And, again, for all the reasons that I've argued and for which, in our brief, I would ask the court to affirm the trial court's decision and find the defendant guilty of the charges here. I just have one final question. Yes. At no time prior to the trial or, for that matter, any time during or after the trial, did the defense raise the issue of your authority to prosecute? They did not. No pretrial motion, no even oral motion, any time during the proceedings? No. In my review of the record, the case was up almost 20 times in court at various states, from arraignment to continuances, and never raised that issue. In fact, quite honestly, in the 35 years I've been prosecuting for the village and other municipalities, I've never had anybody raise that issue. They may have raised the issue, as Justice Malone pointed out, about did a violation occur within our village. And we've reviewed cases and looked at the facts of the case and reviewed that with the officer and looked at maps and jurisdiction limits and so forth. And in some cases we concluded, in fact, there was no violation that occurred within the village limits. And in those instances, I simply gave that case back to the state's attorney's office and said, you know, we don't have, even within our letter of authority, we don't have any ability legally to prosecute a violation which does not occur within the village limits. There was no question this was within the village. The occurrence here was within the village of Lincoln Street. Most of the violations were. If you listen to Mr. Peckler's testimony as he's talking about going on to Route 60, which may be in the village of Vernon Hills or Mattawa or maybe unincorporated Lake County, but Stevenson High School is located in the village of Lincolnshire, Route 22, all the way up to Riverwoods Road where one of the instances occurred, and all the way up to that north roundabout traffic circle that they described, that's all in the village of Lincolnshire. There may have been instances, like I said, where they went, they drove beyond and they came back into the village. When they came back through the roundabout, back on Riverwoods Road down there. But at any time prior to the trial, during the trial, or in a post-trial motion, did counsel for the defendant raise your authority to prosecute? No, he did not. Thank you. Thanks. I have no other questions. Thank you. Mr. Allen Zurn, will you come back, please? I have a question. Oh. Okay. What's your response to Ms. Peck's statement that there should be something in every file and every prosecution? Well, in the Wainer case, what this court said was if, in fact, that authority exists, that's sufficient. We haven't gotten any guidance in 40 years from this court about what we need to do to establish that. And I think it's of some significance that it hasn't been raised in this court except for the Wainer case and then the Bull Valley case, which, as Justice Mullen pointed out, was not an issue of authority. It was an issue of location, whether a violation occurred there. If I'm to read the precedent from this court, it says we're not required to do that. And if they don't raise it, wait, because as a practical matter, if they raise that at the trial level, we either have the letter or we don't. And if we don't have the letter for whatever reason or we're not able to produce it and it simply gets turned over to the State's Attorney's or turns back to the State's Attorney's Office,  so that's always their case. They give us a letter of authority to prosecute those cases. So it doesn't end the prosecution because we don't have a letter of authority. We just are not the individuals to prosecute if one of these State's Attorneys would have to do it. Does the court call that Lincolnshire appears at also have an assistant State's Attorney present prosecuting State charges? Or do Lincolnshire and the State have their own court dates? Well, we have every trial date that we are in there, there's always a State's Attorney in that courtroom. And again, in many instances, there may be State charges with a local charge. There may be resisting arrest or possession of cannabis or something along those lines, which are State charges that would not be within the purview of the Illinois Vehicle Code that our office would not have the authority to prosecute. But, yes, as a practical matter, there's an assistant State's Attorney in our courtroom every time we're there. Thank you. Any other questions? No. Thank you. Ms. Fick, you may proceed. Thank you. Thank you, Your Honors. Regarding the second issue, there's a few things, the reasonable doubt issue I wanted to just clarify. First of all, Mr. Peckler never said that Daniel's driving was horrible or that it was bad. He simply stated that this kid seemed nervous. And there was no one else there that could have said otherwise. This man had 30 years of experience with kids driving. Certainly in those times, there would have been, he would have had to correct the wheel, press the instructor brake, which is there for a reason. What about the tests that were administered by the driving instructor, retired police officer, and the on-duty police officer? The field sobriety tests? Pardon? The field sobriety tests? Yes. As far as those are concerned, according to the unrecorded tests, and the testimony of Officer Beal and Dean Rogers, it sounds like he did not have balance. However, according to the video recorded tests, the judge found that Daniel did very well on those. So there seems to be a conflict as to how well he did, what the tests showed, whether they showed he was under the influence of cannabis. So as far as those tests, they're not conclusive as to whether he was impaired. Well, you said that they were contradictory, I thought, did you not, at least the evidence was? That the video latter was different from the non-video former? It seems to conflict, yes. Isn't that something that the prior effect is supposed to reconcile? Yes. Certainly there is deference to be given, and that is the duty of the trial court. However, where there is simply insufficient evidence, this court has an obligation to reverse. That's what we're asking to be done in this case. One more point I'd like to make is that as far as Daniel's refusal to give any tests, the judge specifically did not give that any weight because he said it makes sense. He admitted to smoking the night before, he's going to have something in his system today. So I just wanted to clarify that error. No, I was aware of it. I thought the judge was very astute in saying that because I don't consider myself an expert on marijuana, but my recollection is that it stays in your bloodstream for quite a number of days. That's my understanding as well.  Well, thank you, Your Honors, if there's no other questions. Do you wish to comment on the forfeiture issue? I stand on what I argued. The only other thing is counsel had mentioned that in this particular court, it had only been addressed in Wyatter and Village of Bow Valley, but this specific issue was addressed in the third district in Pothole and Herman as well. And as I stated in the brief, we ask that you follow Herman. Wait a minute. That was an issue of incorrect citations. There had never been a charge by the local prosecuting authority. Correct. That's the same situation here. There was never an issue. I'm sorry. Wasn't that the issue in Herman? The issue was that it was prosecuted by the municipality for a state violation, which is the same issue that we're facing here. Okay. But in that case, an ASA initialed the ticket, and that, as I understood it, that was the sum total of the proofs concerning compliance with the statute. Yes, that's my understanding. And the court found that that was insufficient to show that it had been granted. It sounds to me like they didn't have authority from the ASA. That very well may have been the case, yes. I don't have a specific answer on that. I apologize. But is, I guess my concern is, is that the right to be prosecuted by a particular authority, is that a personal privilege somebody can waive? That, as I argued, is structural error because it goes to the fundamental due process tenant of notice. It is a, the framework of the trial is established by the prosecutorial authority, particularly here where the citation did seem to muddle it somewhat. It would have been helpful to have a clear indication that it was the village of Lincolnshire who was bringing this particular charge against Daniel. Thank you. We'll take the case under advisement. There will be a short recess. We have another case.